J-S07031-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| NOELIA REINOSO HERNANDEZ | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| ALEXANDER RAFAEL TAVERAS | : | |
| GOMEZ | : | |
| | : | No. 709 MDA 2025 |
| Appellant | : | |

Appeal from the Judgment Entered September 23, 2025
In the Court of Common Pleas of Dauphin County
Civil Division at No: 2024-CV-03996

BEFORE:  BOWES, J., OLSON, J., and BENDER, P.J.E.

MEMORANDUM BY BENDER, P.J.E.:　　　**FILED: MARCH 30, 2026**

Alexander Rafael Taveras Gomez (Appellant) appeals *pro se* from the Part 2 order[1] entered in this partition action initiated by Noelia Reinoso Hernandez (Hernandez).  We affirm.

On June 6, 2024, Hernandez filed a complaint seeking partition of the parties' jointly owned residential property.  The parties appeared before the trial court on October 24, 2024.  The trial court subsequently entered a Part 1 order which stated:

---

[1] "The Pennsylvania Rules of Civil Procedure 1551 – 1574 split a partition action into two, distinct, chronological parts.  Rules 1551 – 1557 govern Part 1, and Rules 1558 – 1574 govern Part 2." **Kapcsos v. Benshoff**, 194 A.3d 139, 141 (Pa. Super. 2018) (*en banc*).  A Part 2 order results from "an equitable proceeding where the trial judge … balances the equities to decide what form the partitioning will take." **Id.** at 142.

AND NOW, October 25, 2024, upon the parties having appeared in open [c]ourt, [the parties] have agreed that the property located at 2640 North 6th Street, Harrisburg, Pennsylvania, should be partitioned. Said property is owned in equal shares by [the parties], and it is hereby Ordered and Decreed that said property shall be partitioned. [The parties] are directed to have the property appraised with the cost of the appraisal being divided equally between [the parties]. In the event that the parties cannot agree to a sale between the parties, then the [c]ourt will schedule a further hearing in this matter.

Part 1 Order, 10/25/24 (single page).

The parties obtained an appraisal but could not agree about selling the property. On April 18, 2025, the trial court held a hearing pertaining to the second part of the partition action. The trial court specifically "sought to ascertain the relative amounts paid/due each party and to order a plan to either sell one interest to the other or to sell the property to the general public and divide the proceeds." Trial Court Opinion (TCO), 6/25/25, at 1 (citing Pa.R.C.P. 1570). Hernandez and Appellant were the only witnesses at the hearing. The trial court summarized their evidence as follows:

The property that is the subject of this proceeding is 2640 N. Sixth Street, Harrisburg (Dauphin County), Pennsylvania (Property). It was purchased by the parties to this action on May 3, 2021 for the price of $34,000. The value of the property as determined by a certified Pennsylvania real estate appraiser was $145,000 as of January 27, 2025.

There was varying testimony from either party as to who paid for certain things and who did what work on the property. For her part, [Hernandez] testified that they used $34,000 of their joint money to purchase the property. She further testified she moved out of the Property in late September of 2023[,] and at that time[, Appellant] and his brother and father lived at the Property. [Hernandez] indicated that she continued to pay the gas bill after she had left the Property from September 2023 to January 2024 in the amount of $3,475. There were unpaid trash bills in the

- 2 -

amount of $3,727.89 as of March of 2025. The property taxes were delinquent for tax years 2022, 2023, and 2024. [Hernandez] paid $1,000 to the Dauphin County Tax Claim Bureau on September 19, 2024 to have the Property taken off the tax sale list. ... Both parties paid for materials such as wood, drywall, wires, flooring, tiles, and paint to fix the property. No building permits were obtained except for the exterior of the Property. There was no evidence submitted as to the value of the exterior repairs nor was a copy of the permit provided for the record. Finally, both parties agreed that a fair rental value for the property was $1,400 per month.

[Appellant] testified that both [parties] expended approximately $25,000 in renovating the home. [Appellant] also testified that [Hernandez] moved out at the beginning of 2024[,] rather than September of 2023. [Appellant] believed that [Hernandez] did not pay the gas bills. Rather, [Appellant] testified that a roommate, Jose Alberto, paid for these in exchange for rent. [Appellant] was not clear as to what bills were actually paid and even as to when Jose Alberto stopped living at the Property. ... [Appellant] did not have an "exact value" as to the amount of money and the value of labor he had expended on renovating the Property but valued it at $20,000.

*Id.* at 2-3 (citations and footnote omitted).

On April 23, 2025, the trial court issued the Part 2 order which values the Property at $145,000.00, and "directs that either party shall have the right to purchase the interest of the other party for the figure of $72,500.00." Part 2 Order, 4/23/25, at 1. The order further states:

The [trial c]ourt finds [Appellant] made $5,000 worth of contributions to the [Property] in the nature of time and materials to renovate it for habitation.

The [trial c]ourt also finds [Hernandez] made $17,275.74 worth of contributions to the home as follows:

(a) $3,475.74 which represents gas utility bills paid by [Hernandez] after September 2, 2023, when she no longer resided at the property;

- 3 -

(b)     $500.00 which represents one half of the money paid by [Hernandez] to stay the 2024 [t]ax [s]ale; [and]

(c)     $13,300.00 which represents one half of the agreed fair rental value for the property of $1,400.00 monthly for nineteen (19) months….

*Id.* at 1-2 (paragraph numbers omitted).

Upon receiving the decision, Appellant filed a post-trial motion for reconsideration which the trial court denied on May 8, 2025.  On May 20, 2025, Appellant filed a notice of appeal,[2] followed by a court-ordered concise statement on June 5, 2025.

Appellant presents the following issues for review:

1. Whether the trial court erred and abused its discretion in awarding Appellant only a $5,000 credit for contributions to the [P]roperty when his unrefuted testimony established $35,000 in improvements[?]

2. Whether the trial court erred in awarding [Hernandez] a $3,475.74 credit for alleged utility payments when the evidence establishes [she] did not make those payments and, instead, defaulted on the account[?]

3. Whether the trial court erred in awarding [Hernandez] $13,300 for one-half fair rental value for nineteen (19) months where [Hernandez] retained access to and possession of the [P]roperty throughout 2024 and Appellant never exercised exclusive possession[?]

Appellant's Brief at 8.

_____

[2] Although the April 23, 2025 order disposed of the parties' claims, judgment had not been entered when Appellant filed his notice of appeal.  Upon direction from this Court, Appellant praeciped the trial court prothonotary, and judgment was entered on September 23, 2025.

"When reviewing a trial court's decision to grant a petition to partition, this Court is limited to whether the court's findings of fact are supported by competent evidence, whether the court committed an error of law, or whether the court abused its discretion." *Russo v. Polidor*, 176 A.3d 326, 329 (Pa. Super. 2017) (citations omitted). We have explained:

> The purpose of partition is to afford those individuals who no longer wish to be owners the opportunity to divest themselves for a fair compensation. While owners of property generally have an absolute right to partition, parties are free to restrict that right. Moreover, partition is a possessory action; its purpose and effect being to give to each of [the] joint owners the possession to which he is entitled.... It is an adversary action and its proceedings are compulsory. The purpose of the action of partition is to divide property, not to sell it. A sale may become an incident, but is not the objective point of it.

*Id.* at 329-30 (citations and quotation marks omitted).

As noted above, there are two parts to a partition action. In Part 1, the trial court determines whether the property is partitionable under law. *See Kapcsos*, 194 A.3d at 142. If the trial court finds that the plaintiff has established a right to partition, the trial court enters an order directing partition pursuant to Pa.R.C.P. 1557. After a Part 1 order becomes final, the action proceeds to Part 2, where the actual division, award, or sale of the partitioned property occurs pursuant to Pa.R.C.P. 1570. "A Rule 1570 order may (1) divide the partitioned property among the parties, (2) force one or more of the parties to sell their interest in the land to one or more of the parties, or (3) sell the land to the general public and distribute the proceeds among the parties." *Id.*

Appellant appeals from the trial court's Part 2 partition order, and assails the trial court's findings regarding: (1) the $5,000 credit to Appellant for his contributions to improvements to the Property; (2) the $3,475.74 credit to Hernandez for her payment of utilities; and (3) the $13,300 credited in Hernandez's favor for one-half of the fair market rental value of the Property after she moved out and Appellant continued to live there. Appellant argues:

> The trial court's findings regarding property contributions, utility payments, and fair rental value are unsupported by the record and contrary to Pennsylvania law on partition accounting. The court abused its discretion by disregarding unrefuted testimony and awarding [Hernandez] credits she did not legally or factually earn. The decision must be reversed and remanded for recalculation of the parties' respective contributions.

Appellant's Brief at 11.

The evidence does not support Appellant's claims. Appellant testified that he and Hernandez bought the Property in 2021 for $34,000. N.T., 4/18/25, at 22. He described the Property as a three-bedroom, one-bath duplex. *Id.* Hernandez stated that the $34,000 purchase price "was so low" because the parties "had to fix it." *Id.* at 18. She testified that the improvements were completed by the time she moved out in September 2023. *Id.* at 7, 10, 19. Appellant confirmed Hernandez's testimony about the completion of the improvements. *Id.* at 28-29.

Hernandez testified that she had asked Appellant to move out, and offered to pay him for his half of the Property, but he refused. *Id.* at 8. She also stated that she had suggested that they "rent the house" and "split the

- 6 -

amount," but Appellant refused. *Id.* Consequently, Hernandez determined she "had to leave." *Id.* According to Hernandez, Appellant began "living with a whole family" after she left, and refused to pay her any rent. *Id.*

Appellant claimed that Hernandez continued to live at the Property after September 2023, "because she still had clothing there." *Id.* at 23. He stated that "she went sometimes," but stopped living at the Property "at the beginning of 2024." *Id.* However, Appellant also stated that he and Hernandez broke up "in June, July, the summer" of 2023, and testified that Hernandez did not sleep at the Property after September 2023. *Id.* at 23-24.

Appellant testified that he wanted to keep the Property. *Id.* at 32. He agreed that the Property was worth $145,000, but disagreed with paying Hernandez one-half of that amount, or $72,500. *Id.* at 33. Appellant testified that he valued Hernandez's interest in the Property to be $45,000, and that was the amount he was willing to pay her. *Id.* at 33-34.

1. *Improvements to the Property*

Hernandez stated that she and Appellant used joint funds to improve the Property with new "[f]loors, tiles, paint, everything." *Id.* at 18. She was "not really sure" how much the parties spent on improvements, and stated that they "had all the[ir] money together." *Id.* Hernandez added that Appellant performed the work "because he knows how to do it." *Id.* at 19. Appellant confirmed that he performed the repairs to Property. *Id.* at 23. He stated that he and Hernandez together spent "more than $25,000" on home

improvements. *Id.* at 22. Appellant estimated the value of the work he performed to be $20,000. *Id.* at 26.

2. *Hernandez's Utility Payments*

Hernandez explained that the gas bill was in her name, and she continued to pay it after she moved out in September 2023. *Id.* at 9-10, 21 (admitting Exhibit 2) (copies of gas bills)). She testified that her payments totaled $3,475. *Id.* at 9-10. Appellant disputed Hernandez's payment of the gas bills. He stated that there was "someone living there[, Jose Alberto, who] was paying the bills in exchange for rent, but then that became a whole mess, and he stopped paying. So I would have to check to see if [Hernandez is] telling the truth."[3] *Id.* at 24.

3. *Fair Market Rental Value*

Hernandez testified that the fair market rental value of the property was $1,400 per month. *Id.* at 15. She requested credit for half of the rental value after she moved out, "because for all of that time I had to pay my own rent and he wasn't paying me anything." *Id.* at 16. Appellant confirmed that he continued to reside at the Property after Hernandez left. *Id.* at 21. He also agreed with Hernandez's valuation of the fair market rental value. *Id.* at 25. However, he disagreed with Hernandez receiving credit for half of the rental value. Appellant stated, "I don't agree with what she said that I would have

_____

[3] Appellant agreed that Hernandez paid $1,000 toward unpaid real estate taxes. *Id.* at 25.

to give her half of the rent because at the time that she left, that was her decision." *Id.* at 26.

The evidence supports the trial court's Part 2 partition order. As the trial court observes, Appellant "essentially asks this Court to reweigh the trial court's determinations of fact-finding[ and the] credibility it assessed to either party in arriving at its final order of April 23, 2025." TCO at 3. The trial court explained the reasoning for its decision:

> At the hearing, [Appellant] testified that he expended $20,000 comprised of his money and work. However, [Appellant's] demeanor throughout the proceeding conveyed to the [trial c]ourt that he was attempting to "make a deal." He provided no receipts for claimed substantial contributions nor a realistic summation of the time spent doing specific work. We did not find his testimony to be credible.

> [Appellant] also takes issue with the amount of $3,475.74 awarded as a credit to [Hernandez] for money she paid toward the gas bills. He contends there is "newly discovered evidence" which will prove [Hernandez] did not make these payments. However, … the time to prove his case was at the hearing. [Hernandez] had receipts and testified credibly as to the payments she made. Further, [Hernandez] testified credibly that she vacated the property in September of 2023, not early 2024. We further found that any evidence concerning the payments of "Jose Alberto" to be dubious at best.

> Next, [Appellant] raises concern that th[e trial c]ourt awarded [Hernandez] $13,300 for one-half of the fair rental value for a period of 19 months [while Appellant] resided solely at the Property. Here again, [Appellant] agreed with [Hernandez] that the fair rental value was $1,400 per month. We do not find [Appellant] to be credible when he testified that [Hernandez] left in early 2024. Notably, he now contends in his Statement of Matters that [Hernandez] had possession throughout 2024. Again, we find his credibility on this issue unavailing. Accordingly, we awarded [Hernandez] credits in the amount of one-half the

rental value ($700 [per month]) from September 2023 to April 23, 2025 or 19 months.

*Id.* at 5-6 (citations and footnote omitted).

The evidence supports the trial court's findings.  As the trial court did not err or abuse its discretion, Appellant's claims do not merit relief.

Order affirmed.

Judgment Entered.

_____
Benjamin D. Kohler, Esq.
Prothonotary

Date: 03/30/2026